May it please the court. My name is Michael McReynolds. I am the attorney representing the appellant in this case, Mr. Michael Holloway. This case, I think the fundamental issue in this case is the fact that it is a Federal Employers Liability Act case, and that under the longstanding rules provided by the United States Supreme Court, particularly in the Rogers v. Missouri Pacific in 1957, and eight years ago now in McBride, CSX. Would you raise the lectern a little bit so you can speak more directly into the mic? Maybe it's as high as it will be. I think it is. I'm shrinking as I get older, Your Honor, but I'm still... But you have additional inches to lose. I'm shrinking also. I guess all of us men are. Is that better, Your Honor? I'll try to speak up a little more. No, that's fine. Thank you. Anyway, in the fundamental principles espoused in Rogers v. McBride is that any evidence, any negligence on the railroad, no matter how small, that plays any part in connection with the injury is sufficient to take the matter to the jury. And fundamentally, what the district court did here is take that away. And I would submit that under those precedents, and even if you were to dismiss the plaintiff's submission as in violation of the local rules, which I do not believe it was, if you look carefully at our submission in that case, it does reference specific paragraphs of the defendant's motion. But even if we just look at what the railroad submitted, there is sufficient evidence alone there to take the case to the jury. So tell me, how was Johnson's management style relevant to the negligence claim? Johnson's management style was relevant because, Your Honor, he had a particularly, shall I say, vociferous approach of threatening people. And in fact, about a year, year and a half before, there was a petition signed by 24 employees who put their name and their signatures on it, and that that could lead to accidents, precisely what happened here. And nothing had been done about that. So can you link that management style to this particular accident? Yes, because in this particular accident, there had been pressure placed upon Mr. Holloway to get certain work done. And one of those tasks, ultimately, which was assigned to one of his superiors and then to him, was to move these various generators, which were stored in a building that was occupied, and apparently they had gasoline in them, and Johnson said he wanted them out. They had been left there, apparently, for a number of years. The wheels of the generators had been taken off and they had been stored. Historically, there had been, you know, manpower is often an issue in employment and certainly in the railroad. And specifically here, if I could address this issue of that pressure on him, on Mr. Holloway. Mr. Holloway was a union member. He was a foreman union member. He was not an officer of the company. He was not a manager of the company. The railroad, I think, has done a very good of trying to make him into something more than he was. It's clear in the record he had no budget. He couldn't, you know, order these particular assistive devices. And specifically important, which is shown in the railroad submission, the two-wheel dolly that was at the facility had a broken wheel. That, I would suggest, alone is sufficient negligence under the FLA, under McBride, under Rogers, to submit this matter to the jury. And so even apart from the intimidation factor of Nels Johnson, I believe that we certainly should have been entitled to explore that, and we were prohibited from doing that. And that also, under the precedence of the cases we have cited, is sufficient negligence on the part of the railroad. And it's a factual question, ultimately, Your Honor, as to whether that kind of pressure caused or contributed to the injury. And that's a decision that is to be made by the jury, not by the judge. The district court in this case, I believe, took many of those fact-finding issues, including foreseeability, which under Supreme Court President Gallick, the bug bite case where a man gets bit by a bug and ultimately loses his leg. Foreseeability, the Supreme Court said, is a matter that should be left to the jury. And that, again, all these things were taken away from Mr. Holloway by the district court. I believe erroneously looking at it, the district court, as you carefully read the opinion, at one point the judge says that you need more than a scintilla of evidence of negligence. That may be true in a typical case. And actually, some of the cases that are cited on this summer judgment are not FELA cases. FELA cases are different animals, quite frankly. I've been doing this for about 42 years, 10 years as a defense lawyer, the last 32 as a plaintiff. They are different from any other cases, and the Supreme Court has recognized that. And this matter should have been allowed to go to the jury for that reason. And again, the question for the jury would be what? Johnson's acerbic, which is of such an interior effect that it caused this man, your client, to do something that no rational person would otherwise have tried to do, eroding his big generator by himself. I think that's well phrased, Your Honor, but I think perhaps it is moving it when he didn't have the equipment available. The railroad should have provided some equipment. It is possible that a jury can find Mr. Holloway contributorily negligent for doing that. But that also is a jury question that should be allowed, that was taken away here. That's the real fundamental issue in this. Would the jury have had to find that he was under such compulsive pressure, psychological or otherwise, to do what he did on that particular day? That would be one of the things that the jury could consider. The jury could also consider that the dolly had a broken wheel. The jury could consider that the wheels had been... The broken wheel, the dolly, that would have nothing to do with Johnson's story. No, that would not, but that's... I'm sorry, what I was speaking of, Your Honor, is a separate basis of negligence under the FLA. And we believe that even under the railroad submission, there are multiple issues of negligence that were taken away. Was there any evidence that the railroad was aware of a lack of equipment? Number one, I believe that is certainly implicit, but under the FLA, you don't have to have that. The railroad has its obligation to provide reasonably safe tools and equipment. That is the overarching principle of the FLA. They have to make sure that the equipment is there. They have to provide the proper training. They have to provide the manpower. This is a union member. Railroad management as a whole has that obligation under McBride. Like a broken handrail on the boxcar. Yeah, now that broken handrail on a boxcar is negligent, but also that would be a Safety Appliance Act violation, which gives you... there's no contributory negligence in that scenario. Perhaps a poorly maintained switch. The railroad has an obligation to make sure that its switches are properly maintained. The employee doesn't have to prove that the railroad knew that that switch was not properly maintained. It's their fundamental obligation. The bar is very, very low in FLA cases for a reason. This law was passed 1908, well before I was practicing law. In 1939, the Congress made amendments to the FLA and removed the fellow-servant rule, removed assumption of the risk. I would suggest to you also that many of the arguments that the railroad made and that the district judge approved here really go to assumption of the risk and they should have been barred. There would be a ferocious fight under Motions and Lemonade, I think, at a trial on that particular issue, as sometimes the issue between what may be contributory negligent, what may be assumption of the risk, is not always perfectly crystal clear. I would not suggest that. But I would say that there are times that it is clearer than others. Putting a man in the position here where he has to move, comes very close and may really fall into the assumption of the risk arena. Those issues were not fleshed out, could not be fleshed out in a trial. Because of the district court's denial of your motion to compel? Well, that's part. It's the motion for it. There's two parts. We don't rest the case, the negligence does not rest solely on Nellis Johnson being a horrible manager. That is one, and I think it is a significant area of negligence. We've cited some cases that show that, in fact, that kind of pressure meets the standard of negligence. And I would note again this Harbin case, which we cite. FELA cases need to present evidence scarcely stronger than pigeon bone broth to support that. And that's precisely the case here. We believe we have significantly more than pigeon bone broth, of course. But that really, the point here is that shows that that bar is very, very low. And it appears that the district court was looking at other types of cases, maybe other personal injury cases, or I believe some of the citations were to an EEOC case, where the standard for the level of evidence is much higher than in an FELA case. I see that I have my three minutes remaining. I would like to save that for rebuttal, if that would be okay. Very well. Thank you, Mr. McReynolds. Good morning, Mr. Lamb. Good morning. Good morning, Your Honors. I was hoping I'd hear the pigeon bone broth quote. It is often quoted in this area of law that I have not practiced quite as long as esteemed opposing counsel, but I've been doing this about 35 years. They may be a little less rare than hen's teeth, but this Court has affirmed summary judgment in FELA cases on a number of occasions. They're sitting there on my table. And Judge Wolman was on a panel in the Lager case where a summary judge was affirmed on the exact, one of the two issues that Judge Autry ruled on, which is the lack of foreseeability. And with due respect to counsel, the only element of the five elements of negligence we all learned in law school, which is duty, foreseeability, breach, causation, damages, the only element that is relaxed is causation. And that's because of that pesky language in the FELA that says, in whole or in part, if the negligence caused. The cases, including this case, these cases, the other elements which Judge Autry found, there was no record evidence to controvert, specifically negligence, which is did the railroad provide a reasonably safe place to work, and foreseeability. Was there foreseeability of this incident? The standard and the burden is the same. And respectfully to counsel, our statement of undisputed material facts was deemed admitted. It wasn't some controversial decision by Judge Autry. Under the local rule, all matters set forth in the statement of the movement shall be deemed admitted for purposes unless specifically controverted. Judge Autry quoted that. They did not controvert our statement of undisputed material facts. They filed their own, and we've pointed out in our brief that it was argumentative and at times not supported by citations of the record. But Judge Autry had our statement, which were direct quotes from the deposition of the plaintiff. For instance, on this pesky dolly issue, paragraphs 29, 30, and 31 of Union Pacific's statement of undisputed material facts, deemed admitted. Judge Autry had no other record. Before this incident, plaintiff never complained he needed a ramp, boom, dolly, or forklift. Before this incident, he did not try to obtain any special tools, and he did not obtain a dolly forklift before moving the generator. And, in fact, if you look at page 255 of his deposition, he says, I didn't think I needed a dolly. Plaintiff was a foreman. He had the authority, and, in fact, the record is there were 10 employees earlier that day. He could have asked to help him lift this. The reason in the record is because he'd done this before by himself. He didn't think he was going to get hurt. In fact, the evidence is he moved that generator four times that morning without getting hurt. He moved it from the depot. He moved it from the truck. He moved it up to where he eventually leaned over. On the fifth time, he had some pain. Sometimes, we all know, as we get to age, pain happens. But this is not a workers' compensation statute. The courts are clear on that. You have to have record evidence, in this case, of negligence and record evidence of foreseeability, and there was none presented to Judge Autry. Let's see. The lack of foreseeability was what? The lack of foreseeability is, let me go to that portion of my outline, Your Honor. This was, again, at paragraph 29 of the statement, Mr. Holloway never complained he needed a ramp, boom, forklift for additional help. So there was no notice to the railroad that this dolly was broken. There's no discussion at all that this dolly was even available that day. It's just a mention of a broken dolly. He said he could do it safely by himself. He'd done so before without injury. And as I said before, at paragraphs 12 through 15, he'd moved that generator that time, that morning, four times, without injuring himself. So where was there notice that the railroad, quote-unquote, knew that lifting this generator was an unsafe task? There just was none. Mr. Reynolds' response to my question along those lines was that the railroad has a duty to provide a safe place. Correct. Which I think sort of implies they didn't have to know the specifics of a broken dolly, etc. What's your response to that? The response to that is the railroad has to provide a reasonably safe place to work. That's the definition of the duty. You must provide a reasonably safe place to work. Given that Mr. Holloway was a foreman, given that he had the opportunity to ask for help himself, given that he had done this job before, given that he didn't think he needed any of these tools, Judge Autry looked at this uncontroverted record in our Statement of Facts and said, where's the negligence? Where is the providing of an unsafe place to work here? The record is he was told to move these generators six months ago, and he decided finally that morning after some conference calls and some e-mails, I'm sorry, Judge, that he would get out and try and do this by himself, which he had done before. He said, I was going to try and move one of the smaller generators. I'd done it before. I hadn't had a problem. Where is their notice? I mean, he is a supervisor. He is the man, if you will. It's not the lifting cases, even some that have been affirmed, the lifting cases all involved. In fact, the Gibbs v. Union Pacific case, which they cite in their brief, a district court over in Illinois, talks about employees being told to work under duress. They didn't have enough help. They didn't have lifting. None of those facts are here. In fact, the Gibbs case is, I think, although they cite it, we respond to it, and it's a crucial distinction in this case because in Gibbs, a lifting case, he was in a rush. The gang was understaffed. It was a hectic day, and he had unreceptive supervisors, supposedly Mr. Johnson. All different facts here. These facts are much closer to the case that Gibbs talks about, Wadiak v. Illinois Central, where the plaintiff said, I had sufficient and adequate tools. I tried to do it manually because I'd done it before. I didn't think I needed help, and he did it because he'd done it before. Those are the facts in this case, Your Honor. Well, suppose instead of being a foreman, Holloway was a newly hired, I don't think they have the term, common laborer. Suppose he was not a foreman. Would that have given, would he have been, how would that have changed the complexion of this case? I think if he had been a laborer, and, yes, they do have laborers. They're in the maintenance of weight department, I believe. He was a signal foreman, but they do have laborers. And the cases where, lifting cases where summary judgment has been reversed are in those facts, where a foreman said, get out there and do it, and somebody complained and said, well, we sure wish we had a boom. We'll do it anyway. Again, as a supervisor, he is the railroad. He is the person who's supposed to be deciding how the task is done. And as I said. Well, was he contributarily negligent as a matter of law? No, because I anticipated that question. I think what Judge Autry is saying is under the record evidence, again, uncontroverted, where is the failure to provide a safe place to work? And that's why this Dolly issue does bother me. Was he required to provide his own safe place to work? He was, yes. In fact, he says in the reply brief, they make what I consider a helpful admission, that they really had narrowed their theories down to two. One, a failure to provide safe equipment and sufficient assistance, and two, failure to properly educate and train. The record evidence was just the opposite because Mr. Holloway did not ask for assistance because he didn't think he needed it, and he testified he followed Union Pacific's training. He did a lone job worker briefing. So if you're going to do a job by yourself, the rules require, and this is in the record, you have a briefing with yourself, believe it or not, and identify what the risks are. And he said the only risk was using proper lifting technique. And in his statement of material facts, he admitted he was trained by the railroad to do safe lifting. He followed that technique. So where was the negligence? Where was the failure to provide training? Where was the failure to provide a safe place to work? If they've narrowed the issues to that, the record evidence was just the opposite. This Vidlack case versus Burlington Northern is instructive. It's unpublished, but it was cited by this court in Lager, a lifting case, where, again, the court found no evidence of foreseeability because the gentleman there, a worker, not a foreman, had hurt his back lifting, but he had had no problems carrying heavier items before. Exactly on point. In fact, here we have a supervisor, not a laborer, to use Judge Wolman's accurate characterization. And in Vidlack, he had had no problems carrying heavier items. Here in this case, it's undisputed that Mr. Holloway testified, I'd carried generators before. I had never hurt myself. In fact, he picked out a smaller one specifically that morning to try and make it look like he was doing this job that he'd been told to do six months earlier. I didn't bring the picture of the generator with me, but I was wondering, what the same weight? That's a great question. I looked. How in the world did he actually get it up on the bed of that pickup? He did. Yes, he did. He got it up. Let me find those specific. He moved it four times, and it's paragraphs 12 through 15 of our statement of undisputed facts. And there is no evidence in the record. I was curious myself. I didn't take the deposition. My colleague, Mr. Hicks, did. Even in their statement of undisputed material facts, there's no evidence of what it weighed. It certainly wasn't one of these little generators that the TV tells every household owner to buy. I'll be honest with you, Judge. Well, I don't mean to be flippant about that. This didn't look like a 550-kilowatt. It was a big engine. Yeah, as I say, I don't see any record evidence of its weight, and I know that Mr. Holloway described it as one of the smaller generators, and he had lifted them before by himself. And, yes, the four movements before are at paragraph 12 of our undisputed statement of facts, where he got it out of the depot, he loaded it onto his truck, he moved the truck, got it out of the truck, moved it to the edge of this cabinet, and then didn't get hurt until he tried to lift it into the cabinet. Briefly, let me discuss the first 27 pages of our brief. I was embarrassed it took us so long to get to the summary judgment. But the first two points on appeal were whether the court abused its discretion in denying a motion to compel and whether it abused its discretion in granting our motion protective order. And I submit, and I think Judge Grunder asked the right question, regarding the motion to compel, it didn't have anything to do with the Snells-Johnson or the management style. It had to do with work product and incomplete interrogatory answers and that sort of thing. So there's been no linkage of how the denial of that motion had anything to do with the ruling on summary judgment. And, again, abuse of discretion standard would apply. And the motion protective order, what happened there was the written discovery requests were rife with all these questions about Mr. Johnson. Mr. Johnson was deposed. And he was deposed, in fact, after the motion was filed, they asked Lee to take his deposition. They do not cite one piece of that testimony in response to the motion for summary judgment. There was nothing in that deposition that they thought would even, was relevant to the case. And that's because Johnson was nowhere near the scene of the accident. He didn't do anything with Mr. Holloway. In fact, his only relevance was six months earlier he said, these generators got to get moved. So the idea that the court abused its discretion in saying questions about his management style are off limits Again, they took a deposition. They didn't use any of it in response to our motion. And they never, under Rule 56, asked for another deposition, which they could have. There are certainly other people. And, of course, there's always the ubiquitous corporate rep deposition that we get in these cases. And that was never tried. Were they prohibited from asking the questions about management style at the deposition? The order said, the exact phrasing was questions about management style. The motion protective order is granted. Questions about management style will be, are off limits. Before the deposition? Yes. So, arguably, they didn't cite it because they weren't allowed to inquire about it. Well, that is true. And, Judge, the whole thing about Johnson Let me ask the question, though. Yes, sir. Isn't there, isn't it at least arguable that pressure from Johnson led Holloway to move these generators without getting any help? At least I think that's the argument there. If the facts were different, maybe. But Johnson, the only evidence is Johnson, in June or July, said those generators got to get moved. And this was December. But is it more than passing strange that, what, 28 fellow workers would sign a petition or a statement about a manager? I mean, railroaders, I've known a few of them over the tough industry. They are. And the supervisors are not noted for their gentility, probably. In some cases, that's true. It was a tough way to make a living. It is. Well, that's not, on the other hand. It's also the American dream. The $100,000 high school education still exists in a highly unionized industry. So it's got its pros and cons. If I may step over the case. This court has actually decided it's not an FELA case, but it was an attempt to bring up the kinds of things in the Johnson case, and I cite Crown versus Union Pacific, where it really was an attempt to create a negligent inflection of emotional distress claim because of having to work with stressful bosses. And the court has significantly narrowed that and said you can't have an FELA claim for negligent inflection because you would impose a duty to avoid creating a stressful work environment and therefore dramatically expand employers' FELA liability to cover the stresses and strains of everyday employment. What we had here is a stressful supervisor who angered a number of people months earlier, and, yes, they signed a petition. But there is no link in the record between that and Mr. Holloway deciding that morning, as a foreman himself, I'm going to move a generator. And, of course, we don't know what action, if any, management took in response to that statement by the employers, employees. In other words, I shouldn't say in other words. All I'll say is there was no link, even in their material facts, to that. In fact, Judge Autry, I think, called speculation that there was any link between that, in his opinion. I can find it if you like. Yes, sir. I'd like to follow up on what Judge Grunder said. Is it beyond the realm of plausibility? And your answer will be it is because of the other facts involved. Is it beyond the realm of plausibility for a jury to say that an employee could be so intimidated by his immediate supervisors, intimidating, acerbic, whatever you call style, that the employee would take action that was contrary to the employee's health and welfare? Let me answer it this way. There's a whole separate law body under the unacceptable workplace conduct. You know, they have their own statutes. They have their own collective bargaining agreements. There's the FRA. That's, you know, if Mr. Holloway's group didn't get the relief they wanted, they can pursue it through their union agreement. A whole other statutory body. That's not the FELA. That's a different cause of action completely. All right. Well, thank you, Mr. Lamb. Thank you, Judge Grunder. Thank you, Your Honors. Your Honor, thank you. A few quick points, if I could. Foreseeability under the Gallica decision is in the 372 U.S. at 117, 118, 119, is, in fact, a fact question for a jury. Again, that case was my first day of class in law, torts in law school was Gallic. Little did I know I would be doing this kind of work later. I believe as to the weight of the generator, Judge Wohlman, that you were asking about, I don't believe there is anything formal in the record. I did see there was one item that we submitted. I don't know that it made it to the district court showing it at 169 pounds. We have inferentially from his description in the deposition portion submitted by the railroad, again, about his dragging of this, using a pallet as a makeshift ramp to pull it up onto the pickup truck. They didn't have a ramp. Specifically to the issues, again, this is what was before the trial court. It said, do you think you needed any special tools? I'm reading from the Joint Appendix at page 1007. Do you think you needed any special tools? Answer, it would have been a lot easier if I had a ramp or if I could have had a two-wheeled dolly or if I had a boom. He is then asked, what did you do to obtain a ramp or generator to move or a boom or a dolly to move the generator? Well, there's no way I can get a boom on my truck. They want it moved before I could have got it, before I got the ramp. And the two-wheeled dolly, it belonged to me anyway, and it was broke. So I couldn't use it. I mean, that is in the record before the judge. I think the counsel was very able, was conflating a couple issues here on emotional distress. We're not making a claim for emotional distress. This is an FBLA claim that resulted in a back fusion. And that's what the claim, that that pressure contributed to the actions and what happened here. It is an injury claim. There is no claim for emotional distress alone under the FBLA. You know, that I think is accurate, and that's not what we're asking for here anyway, Your Honor. Thank you so very much. This is off the record. When I practiced law in Aberdeen, South Dakota, it was still something of a railroad track. I never represented anybody. But there, all the FBLA cases went to a couple of lawyers in St. Paul, Bill DePark and Gene Rerat. And I worked at the Rerat firm for a time. And then I got onto Google, and I read a book review by, oh, you know, about Eugene Rerat's life. It has nothing to do with this case, but I've always been fascinated about railroads. And that book was actually written by, I think it was the – Charlie Voss, Jr. did the book review. Yeah, Charlie Voss, who I know very well. And the book was written by, like, Eric Severide's brother. Oh, that's right. It was on somebody who was a really odd little person. But they were designated counsel, I think. And if I could go one other thing off the record, if I might. Just to enlighten us in general. This has nothing to do – the Loos versus BNSF case, which I believe Judge Wolman, Judge Grunder, you were on the panel at the circuit, was argued before the Supreme Court on November 6th. I tried that case at the trial level, and so I did go out, and I was about from – I didn't argue it at the Supreme Court. What was the name of the case? Loos, L-O-O-S, versus BNSF. And so we – again, that has zero to do with this case. It's that little tax issue under the Railroad Retirement Act. Not everybody wants that. Yes, I would just – IRS is right. We'll see how we did at some point. But my little case went to the Supremes, and so I'm – that was very interesting. So anyway, I'm sorry for taking all your time on that. No problem. Very well. Counsel, we appreciate your appearance and arguments.